UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHWURONG LEE,<br><br>          Plaintiff,<br><br>     v.<br><br>THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK AS SUCCESSOR TRUSTEE TO JPMORGAN CHASE BANK N.A. AS TRUSTEE OF MASTR ADJUSTABLE RATE MORTGAGES TRUST 2004-7, et al.,<br><br>          Defendants. | Case No.16-cv-05094-JST<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS**<br><br>Re: ECF No. 18, 19 |

Before the Court are two Motions to Dismiss Plaintiff's Complaint; one filed by Defendants JPMorgan Chase Bank, N.A. ("Chase") and The Bank of New York Mellon ("Mellon") (collectively, "the Bank Defendants"), and the other by Defendant MTC Financial ("MTC"). ECF Nos. 18 and 19. The Court refers to the Bank Defendants and MTC together as "Defendants." For the reasons stated below, the Court grants both Motions to Dismiss. Defendants have also filed separate requests for judicial notice, ECF Nos. 18-1 and 19-1, which are granted in part.

I.     **BACKGROUND**

In May 2004, Plaintiff Shwurong Lee ("Plaintiff") obtained a $1,000,000 mortgage loan in connection with the property located at 1240 Cutlet Ranch Road, Danville, California ("the Subject Property"). ECF No. 1 ¶ 9; ECF No. 18-1 Exhibit 1. The loan was secured by a Deed of Trust ("the Deed") recorded on May 18, 2004 with the Contra Costa County Recorder's Office ("the Recorder's Office") as instrument number 2004-0184646-00. ECF No. 1 ¶ 9; ECF No. 18-1 Ex. 1. The Deed identifies Washington Mutual Bank ("WaMu") as the lender, California

Reconveyance Company ("CRC") as the trustee, and Plaintiff as the borrower. ECF No. 1 ¶ 10; ECF No. 18-1 Ex. 1. The Deed secured a promissory note ("the Note") for $1,000,000 in favor of WaMu. ECF No. 1 ¶ 9; ECF No. 18-1 Ex. 1.

On September 25, 2008, WaMu and certain of its affiliates were declared insolvent and the Federal Deposit Insurance Company ("the FDIC") was appointed as receiver. ECF No. 1 ¶ 11. The same day, Chase entered into a Purchase and Assumption Agreement ("the PAA") with the FDIC acting in its corporate capacity as well as receiver for WaMu. ECF No. 1 ¶ 11; ECF No. 18-1 Ex. 2. Under the PAA, the FDIC transferred to Chase "all right, title, and interest of the Receiver in and to all the assets" of WaMu. ECF No. 1 ¶ 11; ECF No. 18-1 Ex. 2. In his Complaint, Plaintiff alleges, "on information and belief[,]" that the Note and the Deed "were not specifically identified in the receivership as an asset subject to the [PAA]" and therefore "neither were [sic] actually transferred to [Chase]." ECF No. 1 ¶ 11.

On March 15, 2011, CRC, as trustee of the Deed, recorded a Notice of Default ("the NOD") with the Recorder's Office as instrument number 2011-0054937-00 against the Subject Property, identifying $37,184.42 as the amount in arrears. ECF No. 1 ¶ 12; ECF No. 18-1 Ex. 3. On June 16, 2011, CRC recorded a Notice of Trustee's Sale with the Recorder's Office as instrument 2011-0119536-00, identifying $1,017,931.21 as the unpaid balance and July 7, 2011 as the date of the trustee's sale. ECF No. 1 ¶ 13; ECF No. 18-1 Ex. 4. The July 7, 2011 sale was postponed and, on March 2, 2012, a second Notice of Trustee's Sale was recorded by CRC with the Recorder's Office as instrument 2012-0049230-00, identifying $1,049,193,42 as the unpaid balance and March 23, 2012 as the date of the trustee's sale. ECF No. 1 ¶ 14; ECF No. 18-1 Ex. 5. The March 23, 2012 sale was also postponed.

On January 25, 2016, an Assignment of Deed of Trust ("the Assignment") was recorded in the Recorder's Office as instrument number 2016-0012799-00. ECF No. 1 ¶ 15; ECF No. 18-1 Ex. 6. The Assignment transferred "all beneficial interest" under the Deed from Chase to Mellon. ECF No. 1 ¶ 15; ECF No. 18-1 Ex. 6. On July 19, 2016, Mellon recorded a Substitution of Trustee with the Recorder's Office, substituting MTC for CRC as trustee under the Deed. ECF No. 1 ¶ 18; ECF No. 19-1 Ex. D.

On August 4, 2016, MTC recorded a third Notice of Trustee's Sale with the Recorder's Office, identifying the unpaid balance as $1,248,825.01 and September 12, 2016 as the date of the trustee's sale. ECF No. 1 ¶ 19; ECF No. 18-1 Ex. 7. The scheduled sale has been postponed until November 21, 2016.

In October of 2015, Plaintiff entered into a Residential Purchase Agreement with a third party, who was to purchase the Subject Property. ECF No. 1 ¶ 16. That deal did not go through and, on August 17 of this year, Plaintiff entered into another Residential Purchase Agreement with a different third party. Id. ¶¶ 20-21. Plaintiff alleges Chase was aware of the first Residential Purchase Agreement, and further alleges an agreement between himself and Chase allowing him to proceed with the sale. Id. ¶ 17. Plaintiff claims that the foreclosure process violated the alleged agreement between himself and Chase, and constituted unlawful dual-tracking. Id. ¶¶ 20-21. Plaintiff further alleges the trustee's sale was initiated by parties with no lawful interest in the Subject Property. Id. ¶ 22.

## II.   JURISDICTION

Federal courts have subject matter jurisdiction "when a federal question is presented on the face of the plaintiff's properly pleaded complaint." Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987); see also 28 U.S.C. § 1331. If a court has original jurisdiction over one claim in a case, it may exercise "supplemental jurisdiction" over "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). Here, Plaintiff asserts four federal claims against Defendants, and his state law claims stem from the same core set of facts on which his federal claims are based. Therefore, this Court exercises supplemental jurisdiction over Plaintiff's state law claims.

## III.   LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While detailed factual allegations are not required, a complaint must have sufficient factual allegations to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted). A party may move to dismiss based on the failure to state a claim upon which

1  relief may be granted.  See Fed. R. Civ. P. 12(b)(6).  "Dismissal under Rule 12(b)(6) is appropriate
2  only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable
3  legal theory."  Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008).
4  Dismissal is also proper where the complaint alleges facts that demonstrate that the complaint is
5  barred as a matter of law.  See Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir.
6  1990); Jablon v. Dean Witter & Co., 614 F.2d 677, 682 (9th Cir. 1980).

   For purposes of a motion to dismiss, "all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party."  Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337–38 (9th Cir.1996).  However, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a [P]laintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted).  To survive a motion to dismiss, a pleading must allege "enough fact to raise a reasonable expectation that discovery will reveal evidence" to support the allegations.  Id. at 556.

## IV. DISCUSSION

The Complaint alleges eight causes of action: (1) Wrongful Foreclosure; (2) Promissory Estoppel; (3) Violation of the California Homeowners' Bill of Rights ("CHBR"), Cal. Civ. Code Section 2924.11; (4) Slander of Title; (5) Violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962; (6) Violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692; (7) Violation of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601; and (8) Violation of the Real Estate Settlement Protection Act ("RESPA"), 12 U.S.C. § 2605.[1]

---

[1] In his Opposition to Defendants' Motions to Dismiss, Plaintiff adds a cause of action "for unfair and deceptive acts and practices ("UDAP"), codified at California Code of Civil Procedure §§ 1750-1784 . . . and the Unfair Business Practices Act." ECF No. 20 at 11.  The Court will not consider Plaintiff's new cause(s) of action because "new arguments raised in a reply need not be considered by the district courts." U.S. Bank Nat'l Ass'n v. Friedrichs, No. 12CV2373-GPC(KSC), 2014 WL 12576946, at *5 (S.D. Cal. Mar. 24, 2014) (citing Zamani v. Carnes, 491 F.3d 990, 997 (9th Cir. 2007); United States v. Bohn, 956 F.2d 208, 209 (9th Cir. 1992)).

1   The Bank Defendants and MTC now move to dismiss all claims against them.

2   **A.    Judicial Notice**

Before addressing the merits of the motions before it, the Court must resolve the pending requests for judicial notice. The Bank Defendants have filed a request for judicial notice in support of their motion to dismiss. ECF No. 18-1. Defendant MTC also filed a request for judicial notice. ECF No. 19-1. Except for the Substitution of Trustee, ECF No. 19-1 Ex. D, MTC's request for judicial notice overlaps with the Bank Defendants' request. Both the Bank Defendants and MTC ask the Court to take judicial notice of the Deed, the PAA, the NOD, the Assignment, and the third Notice of Trustee's Sale. Compare ECF No. 19-1, Exs. A-C, E, F, with ECF No. 18-1 Exs. 1-3, 6, 7. In addition to these documents, the Bank Defendants ask the Court to take judicial notice of the first two Notices of Trustee's Sale, as well as various documents relating to a prior litigation involving the Plaintiff. ECF No. 18-1 Exs. 4, 5, 8-10. Plaintiff filed an opposition to both requests for judicial notice. See ECF No. 21. Plaintiff's opposition states correctly that, while this Court may take judicial notice of the existence of these documents, it cannot take notice of allegations asserted in the documents, nor of disputed legal conclusions that Defendants argue should be drawn from them. Id. at 2; see also Lee v. City of Los Angeles, 250 F.3d 668, 689-90 (9th Cir. 2001).

Accordingly, with the exception of the documents relating to the prior litigation,[2] ECF No. 18-1 Exs. 8-10, the Court grants Defendants' requests for judicial notice as to the existence of the remaining documents because each of these documents is properly a matter of public record. See Lee, 250 F. 3d at 689 ("[U]nder Fed. R. Evid. 201, a court may take judicial notice of matters of public record.") (internal quotations and citation omitted).

**B.    MTC's Conduct is Privileged Pursuant to California Civil Code Section 2924(d)**

MTC argues that its motion to dismiss should be granted without leave to amend because

---

[2] Because the Court is granting the Bank Defendants' Motion to Dismiss on other grounds, it need not address whether the documents relating to Plaintiff's prior litigation are part of the public record, or whether these documents contain disputed facts. The Court does not reach the issue of whether Plaintiff is judicially estopped by the prior litigation, or if the doctrines of claim and issue preclusion bar his allegations.

5

its conduct was privileged under California Civil Code section 2924(d). ECF No. 19 at 12. Section 2924, which governs notice requirements in connection with non-judicial foreclosures and provides that related communications are privileged, states as follows:

> All of the following shall constitute privileged communications pursuant to Section 47:
> (1) The mailing, publication, and delivery of notices as required by this section.
> (2) Performance of the procedures set forth in this article.
> (3) Performance of the functions and procedures set forth in this article if those functions and procedures are necessary to carry out the duties described in Section 729.040, 729.050, and 729.080 of the Code of Civil Procedure.

Cal. Civ. Code § 2924(d). Under California Civil Code section 47, "the privilege applies to communications made without malice by a person who has an interest in the communications to another person with an interest in the communications." Powell v. Wells Fargo Mortgage, No. 14-cv-04248-MEJ, 2015 WL 4719660, at *6 (N.D. Cal. Aug. 7, 2015). This privilege applies to all torts other than malicious prosecution. Id.

MTC states that the privilege "essentially encompasses the entire foreclosure process, including the sale," and therefore "all tort and restitution style causes of action, including for wrongful foreclosure and slander[,] should be [dismissed] without leave to amend." ECF No. 19 at 12-14. MTC contends that, as the foreclosure trustee, MTC's "*sole* duties, which it carried out, [were] to adhere to the statutory scheme for conducting a non-judicial foreclosure, including but not limited to, the mailing, publication, and delivery of notices, and the performance of foreclosure procedures." Id. at 12. Plaintiff did not rebut this claim, instead arguing generally that the "trustee's sale is being initiated by parties with no lawful interest in Plaintiff's [Deed]." ECF No. 20 at 7. Yet, as MTC points out, it was not responsible for initiating the foreclosure proceedings nor did it have a duty to "learn of . . . the alleged failure[s]" relating to the Deed. ECF No. 19 at 12; Kachlon v. Markowitz, 168 Cal. App. 4th 316, 335 (2008) ("The trustee in nonjudicial foreclosure is not a true trustee with fiduciary duties, but rather a common agent for the trustor and beneficiary. The scope and nature of the trustee's duties are exclusively defined by the deed of trust and the governing statutes. No other common law duties exist.") (internal citations omitted).

1  Importantly, neither Plaintiff's Complaint nor his Opposition challenges MTC's duty to issue the
2  third Notice of Sale as the trustee.
3        The Court agrees that MTC's conduct is privileged under section 2924(d). "Under a deed
4  of trust containing a power of sale, . . . the borrower, or 'trustor,' conveys nominal title to property
5  to an intermediary, the 'trustee,' who holds that title as security for repayment of the loan to the
6  lender, or 'beneficiary.'" Kachlon, 168 Cal. App. 4th at 334. "The trustee's duties are twofold:
7  (1) to 'reconvey' the deed of trust to the trustor upon satisfaction of the debt owed to the
8  beneficiary, resulting in a release of the lien created by the deed of trust, or (2) to initiate
9  nonjudicial foreclosure on the property upon the trustor's default, resulting in a sale of the
10 property." Id. "The trustee's statutory duties in effectuating the foreclosure are designed, in major
11 part, to communicate relevant information about the foreclosure to other interested persons." Id.
12 at 339.
13       Only a showing of maliciousness can defeat the privilege extended to a trustee executing
14 its obligations under the deed of trust under section 2924(d) and section 47. See, e.g., id. at 343-
15 44 (affirming dismissal of claims against foreclosure trustee for slander of title and negligence
16 based on its recording the notice of default and failing to rescind it upon satisfaction of debt);
17 Shelby v. Ocwen Loan Servicing, LLC, No. 2-14-cv-02844-TLN, 2015 WL 5023020, at *4 (E.D.
18 Cal. Aug. 24, 2015) (acknowledging that "[i]t is possible . . . for a trustee to be liable if the trustee
19 maliciously carries out its duties to provide for liability on the part of the trustee," but that in the
20 absence of this, a trustee is not liable "for carrying out its routine duties"). Moreover, as MTC
21 points out, California Civil Code section 2924(b), which deals with transfers and sales of deeds of
22 trusts, states: "the trustee shall incur no liability for any good faith error resulting from reliance on
23 information provided in good faith by the beneficiary regarding the nature and the amount of the
24 default under the secured obligation, deed of trust, or mortgage." Cal. Civ. Code § 2924(b); ECF
25 No. 19 at 14 n.3.
26       Plaintiff did not allege that MTC acted with malice or in bad faith in discharging its duties
27 as trustee and issuing the third Notice of Trustee's Sale on the Subject Property. Nor does he
28 allege that MTC acted beyond its duties as trustee. Given that all of Plaintiff's claims against

7

MTC are based on MTC's role in initiating foreclosure proceedings at the direction of the Bank Defendants, the protections of sections 2924(d) and 2924(b) apply. Plaintiff's state law claims against MTC are dismissed.

The Court is not extending section 2924(d)'s or section 2924(b)'s protections to federal claims. Because, however, Plaintiff never specifically alleges any facts against MTC in its federal law claims, see ECF No. 1 ¶¶ 65-129, MTC's motion to dismiss is granted in full.

### C.   The Bank Defendants' Motion to Dismiss is Granted

#### 1.   Wrongful Foreclosure

The Bank Defendants argue that "Plaintiff's claim for wrongful foreclosure has no merit because the [S]ubject [P]roperty has yet to be sold – where a plaintiff fails to allege that a foreclosure sale has occurred, the plaintiff fails to bring a claim for wrongful foreclosure."[3] ECF No. 18 at 25. To support their proposition, the Bank Defendants cite to several cases finding a wrongful foreclosure case to be "premature" when no foreclosure sale has occurred. See ECF No. 18 at 25-26. Defendants rely primarily on Munger v. Moore, 11 Cal. App. 3d. 1, 7-8 (1970), Lona v. Citibank, N.A., 202 Cal. App. 4th 89, 104 (2011), and their progeny. Neither of these cases supports the Bank Defendants' argument.

First, "Lona dealt with a challenge to an already completed sale, and thus the court in Lona quite sensibly explained the law only in relation to such claims." Lundy v. Selene Finance, LP, No. 15-cv-05676-JST, 2016 WL 1059423, at *7 (N.D. Cal. Mar. 17, 2016). The Bank

---

[3] Defendants also argue that, as a matter of law, a plaintiff must allege proper tender of the debt due before bringing any claim that arises from a foreclosure sale. ECF No. 18 at 26; ECF No. 19 at 15. Defendants contend that the Court must dismiss the Complaint in its entirety because Plaintiff has failed to allege proper tender or facts supporting the ability to tender the outstanding indebtedness. This Court previously addressed the tender rule in Lundy v. Selene Finance, LP. See No. 15-cv-05676-JST, 2016 WL 1059423, at *6 (N.D. Cal. Mar. 17, 2016). In Lundy, as here, this Court noted that "Plaintiff seeks to prevent an upcoming foreclosure sale, arguing that [the Bank Defendant] is not the true holder of the [Deed] and does not have power of sale. Given the exceptions and qualifications to the tender rule . . ., the Court concludes it would be improper to apply the tender rule to Plaintiff's case, especially at the pleading stage." Id. at *7 (internal citations omitted). As this Court noted in Lundy, "courts often hold that it would be inequitable to prevent plaintiffs, through application of the tender rule, from preventing an erroneous foreclosure." Id. at *6. Therefore, this Court will not apply the tender rule here.

Defendants' reliance on Munger is similarly unavailing. In Munger, the California Court of Appeal for the First District noted that "a trustee or mortgagee may be liable to the trustor or mortgagor for damages sustained where there has been an illegal, fraudulent, or willfully oppressive sale of property under a power of sale contained in a mortgage or deed of trust." 11 Cal. App. 3d at 7. Contrary to the Bank Defendants' assertion, Munger did not also hold the converse to be true. In other words, it did not hold that a trustee or mortgagee would not be liable to the trustor or mortgagor if there has not been a sale. Moreover, a complete bar on pre-foreclosure challenges "would mean that even if a plaintiff offers plausible support for the claim that the entity foreclosing on her property lacks any authority to do so, that plaintiff would nevertheless have to sit by idly until an allegedly improper foreclosure sale was completed before bringing her otherwise valid challenge in court." Lundy, 2016 WL 1059423, at *13. That illogical result may explain why "numerous courts have allowed pre-foreclosure [wrongful foreclosure] claims to proceed." Id. at *7 (citing to Barrionuevo v. Chase Bank, N.A., 885 F. Supp. 2d 694 (N.D. Cal. Aug. 6, 2012); Vissuet v. Indymac Mortg. Services, No. 09-cv-2321-IEG, 2010 WL 1031013 (S.D. Cal. Mar. 19, 2010); Giannini v. Am. Home Mortg. Servicing, Inc., No. C11-04489 TEH, 2012 WL 298254 (N.D. Cal. Feb. 1, 2012)). Consequently, this Court rejects the Bank Defendants' argument that Plaintiff's wrongful foreclosure claim has no merit because the Subject Property has not yet been sold.[4]

---

[4] In Lundy, this Court explained that the California Supreme Court had yet to decide whether pre-sale wrongful foreclosure claims are permissible, although two cases presenting that question were then pending before the California Supreme Court at the time. Lundy, 2016 WL 1059423, at *8 (referring to Mendoza v. JPMorgan Chase Bank, 337 P.3d 493 (Cal. 2014), and Keshtgar v. U.S. Bank, 334 P.3d 686 (Cal. 2014)). This Court was therefore free to "predict how the state's highest court would resolve" that question. Hemmings v. Tidyman's Inc., 285 F.3d 1174, 1203 (9th Cir. 2002). The California Supreme Court eventually remanded Mendoza and Keshtgar for reconsideration based on its ruling in Yvanova v. New Century Mortg. Corp., which held that a plaintiff has standing to challenge a foreclosure where the assignment underlying the foreclosure was allegedly void. 62 Cal. 4th 919, 942-43 (2016). However, likely because Yvanova confined its holding to post-foreclosure challenges, see id. at 924, 934, the Keshtgar court on remand found that "Yvanova has no bearing on this case. Yvanova applies only to actions alleging wrongful foreclosure, not actions to preempt foreclosure." Keshtgar v. U.S. Bank, N.A., 2d Civil No. B246193, 2016 WL 4183750, at *1 (Ct. App. 2016). Therefore, although the Keshtgar court ultimately held that pre-sale wrongful foreclosure claims are not permissible, the court also confirmed the lack of binding California Supreme Court precedent. Mendoza has yet to be decided on remand. This Court continues to conclude, as it did in Lundy, that, were the California Supreme Court presented with this issue, it would allow wrongful foreclosure claims to proceed

Although the lack of a sale is not fatal to Plaintiff's claim, the lack of facts supporting wrongful foreclosure is. See Reed v. Wilmington Trust, N.A., No. 16-cv-01933-JSW, 2016 WL 3124611, at *4 (N.D. Cal. June 3, 2016). Plaintiff alleges a wrongful foreclosure "due to broken chain of title and on equitable principles due to the additional violations alleged herein . . . on several grounds including robo-signing, break in the chain of title due to recordation of a late assignment and faulty securitization, inefficacy of the [PAA], and lack of authority by the purported trustee, MTC, violation of the dual-tracking prohibition as well as JPMorgan's promise to allow a short-sale, and federal statute." ECF No. 1 ¶ 23. The only ground for which Plaintiff provides any non-conclusory factual allegations is the allegedly late Assignment. See id. ¶ 24. Thus, the Court takes the facts alleged as to the late Assignment as true, and rejects all of the other bases for Plaintiff's wrongful foreclosure claim. Iqbal, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint," legal conclusions and conclusory statements are not sufficient to state a claim upon which relief can be granted.)

Even construing the late assignment allegations in the light most favorable to Plaintiff, the Court finds that Plaintiff has failed to allege facts sufficient to support a theory of wrongful foreclosure. Plaintiff contends that the Assignment to Mellon is void because it was made after the closing date set forth in the Pooling and Service Agreement ("PSA") for the trust, specifically that the Assignment was recorded twelve years after the closing date. Id. ¶¶ 24, 26. Even assuming Plaintiff's allegations relating to the PSA are true, Plaintiff's argument fails.

Under the California Supreme Court's decision in Yvanova v. New Century Mortgage Corporation, third parties to an assignment who are claiming wrongful foreclosure must allege facts rendering an aspect of the assignment void as opposed to voidable. 62 Cal. 4th 919, 923 (2016). Plaintiff offers no facts to support his claim that the late assignment renders the Assignment to Mellon void. Plaintiff relies on Glaski v. Bank of America, 218 Cal. App. 4th 1079, 1096-97 (2013), which held that that an attempt to transfer a loan after the trust's closing

---

absent an actual foreclosure provided that a specific factual basis for undermining the authority of the party or parties initiating the foreclosure is alleged.

1   date would be a void transaction under New York law.  Later courts, however, have declined to

2   follow Glaski.  The Second Circuit criticized the New York case upon which Glaski relied, noting

3   that "the weight of New York authority is contrary to plaintiff's contention that any failure to

4   comply with the terms of the PSAs rendered defendants' acquisition of plaintiffs' loans and

5   mortgages void as a matter of trust law."  Rajamin v. Deutsche Bank Nat. Trust Co., 757 F.3d 79,

6   88 (2nd Cir. 2014).  The Ninth Circuit followed the Rajamin court's analysis and held that "an act

7   in violation of a trust agreement is voidable – not void – under New York law."  Morgan v. Aurora

8   Loan Services, LLC, 646 Fed. App'x 546, 550 (9th Cir. Mar. 28, 2016); see also Saterbak v.

9   JPMorgan Chase Bank, N.A., 245 Cal. App. 4th 808, 815 (2016) (finding that an assignment to a

10  securitized trust that is made after the closing date is "merely voidable" and not void); Barcarse v.

11  Central Mortg. Co., No. 14-55287, 2016 WL 4784043, at *1 (9th Cir. Sept. 14, 2016)

12  ("[A]lleg[ations] that defendants violated a Pooling Services Agreement (PSA) when transferring

13  their note and deed to a trust . . . would make the transfers voidable, not void") (internal citations

14  omitted).  Therefore, Plaintiff's claim for wrongful foreclosure based on a late assignment fails

15  and the Court dismisses this claim.

### 2.  Promissory Estoppel

17  The elements of a promissory estoppel claim are "(1) a promise clear and unambiguous in

18  its terms; (2) reliance by party to whom the promise is made; (3) [the] reliance must be both

19  reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his

20  reliance."  Aceves v. U.S. Bank N.A., 192 Cal. App. 4th 218, 225 (2011) (internal quotations and

21  citations omitted).

22  Plaintiff asserts that "Defendants [Mellon], JPMorgan and/or MTC on behalf of

23  themselves or as agents or robosigners of one or more other Defendants made a promise through

24  oral and written representations, that they would not foreclose on the Subject Property if Plaintiff

25  were to sell the Subject [Property] by a short-sale transaction."  ECF No.1 ¶ 38.  Specifically,

26  Plaintiff argues that a letter sent to him by Chase establishes that a short sale promise was made.

27  See ECF No. 1-1 Ex. F.  This letter, however, simply states that Plaintiff has "agreed to a short

28  sale where [he] will be able to sell [his] home for less than what [he] owes[,]" but the letter

1   continues that "**[t]his notice may not stop the foreclosure referral, process, or sale. Don't**
2   **ignore any foreclosure notices**." Id.  Even a perfunctory glance at this letter reveals that (a)
3   Chase made no promise and (b), the foreclosure process might continue.
4     Because the Plaintiff has failed to state facts sufficient to constitute a promissory estoppel
5   cause of action, his second cause of action is dismissed.

### 3. Violation of CHBR

Plaintiff's third cause of action alleges a violation of the CHBR.  Section 2924.11 states in relevant part:

> (a) If a foreclosure prevention alternative is approved in writing prior to the recordation of a notice of default, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default under either of the following circumstances:
> (1) The borrower is in compliance with the terms of the written trial or permanent loan modification, forbearance, or repayment plan.
> (2) A foreclosure prevention alternative has been approved in writing by all parties . . . and proof of funds or financing has been provided to the servicer.

Cal. Civ. Code § 2924.11.  Defendants correctly point out that Plaintiff has failed to establish that a foreclosure prevention alternative was approved in writing by all parties.  See ECF No. 18 at 28-29; ECF No. 19 at 21.  Plaintiff's own exhibits indicate that, even if the parties considered a foreclosure prevention alternative, it was ultimately rejected by Chase.  See ECF No. 1-13 Ex. J ("Your request for a short sale request isn't approved . . . .  You may be able to send a new offer, but it won't stop any collection and/or foreclosure activity if your account is past due.").  Because Plaintiff has failed to plausibly allege the existence of a foreclosure prevention alternative, the Court concludes that Plaintiff has not stated a claim under section 2924.11.

### 4. Slander of Title

To state a claim for slander of title, Plaintiff must allege: "(1) a publication, (2) which is without privilege or justification, (3) which is false, and (4) which causes direct and immediate pecuniary loss." Manhattan Loft, LLC v. Mercury Liquors, Inc., 173 Cal. App. 4th 1040, 1051 (2009) (internal citation omitted).  Plaintiff argues that Defendants "acted with malice when they recorded the false and void" Deed, Assignments, NOD(s), Substitution of Trustee, and Notices of

Trustee's Sale. See ECF No. 1 ¶¶ 59-61.  However, Plaintiff bases this cause of action on the same allegations and theories on which he bases his claim for wrongful foreclosure; namely, that the Assignment of the Deed is void.  Id. at ¶ 56.  For the reasons stated above, the Court dismisses the slander of title claim because the record and authorities before the Court indicate that the Assignment of the Deed was voidable, not void.

### 5. Violation of RICO

18 U.S.C. § 1962 makes it unlawful for persons and organizations to engage in a "pattern of racketeering activity."  See 18 U.S.C. § 1962(a)-(d).  Racketeering activity is defined to include a number of generically specified criminal acts, as well as the commission of one of a number of listed predicate offenses.  18 U.S.C. § 1961(1).  To state a civil claim under section 1962, a plaintiff "must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Odom v. Microsoft Corp., 486 F.3d 541, 547 (9th Cir. 2007) (internal quotations and citation omitted).  To show a pattern of racketeering activity, the plaintiff must allege more than the existence of one scheme with a "single purpose which happen[s] to involve more than one act taken to achieve that purpose." Sever v. Alaska Pulp Corp., 978 F.2d 1529, 1535 (9th Cir. 1992) (affirming dismissal of section 1962 claims because the plaintiff "has not alleged a pattern of racketeering activity").  The plaintiff also must show that the activities "amount to or pose a threat of continued criminal activity." Id. (internal quotation marks and citation omitted).

In his Complaint, Plaintiff alleges that "[t]he conspirators intended to maintain an absolute stranglehold on the American economy for many decades, if not centuries, into the future."  ECF No. 1 ¶ 89.  Plaintiff bases his allegations on "[t]he drafting of fraudulent affidavits and documents and the subsequent execution of the documents."  Id. ¶ 67.  But Plaintiff has not pleaded any specific facts to support his claim that "[t]hese Defendants intentionally participated in a scheme to defraud everyone, including the Plaintiff."  Id. ¶ 68.  Plaintiff's RICO claim is a string of conclusory allegations intermixed with recitals of the elements of a RICO cause of action.

Moreover, the allegations do not give rise to the reasonable inference that the purported fraud with respect to the instruments was a part of a pattern of racketeering activity. United Energy Owners Committee, Inc. v. U.S. Energy Mgmt. Sys., Inc., 837 F.2d 356, 360 (9th Cir.

1988) (Finding that "a pattern of racketeering activity under RICO . . . need only allege predicate acts which are not 'isolated or sporadic.' . . . RICO's continuity requirement is not satisfied if plaintiffs have merely alleged 'a single fraud perpetrated on a single victim.'") (internal citations omitted). The Plaintiff also fails to plead the existence of the requisite RICO enterprise, which much be pleaded independently from the acts of the individual RICO defendants. See Rae v. Union Bank, 725 F.2d 478, 481 (9th Cir. 1984) ("If [the defendant] is the enterprise, it cannot also be the RICO defendant.").

The Court is not persuaded that these deficiencies can be cured. First, courts routinely dismiss with prejudice RICO claims predicated on a residential foreclosure proceeding on the ground that foreclosure proceedings, without more, do not give rise to a RICO claim. See e.g., Zacharias v. JPMorgan Chase Bank, N.A., No. 12-06525 SC, 2013 WL 588757, at *3 (N.D. Cal. Feb. 13, 2013) ("Plaintiff's attempt to cast a straightforward foreclosure proceeding as a pattern of racketeering activity is simply improper."); Johnson v. Wachovia Bank FSB, No. 10-2839 GEB, 2012 WL 4092426, at *3 n.2 (E.D. Cal. Sept. 17, 2012) ("The activity underlying plaintiff's claims was a simple loan transaction and foreclosure under a deed of trust. This is not the kind of unlawful activity contemplated by the Civil RICO Act."). Second, the allegations underlying Plaintiff's claims are premised exclusively on the purported invalidity of the instruments supporting the foreclosure of the Subject Property. The Court has already found that Plaintiff's allegations of invalidity relating to the instruments at issue are unsupported by the facts and authorities before the Court. Because the theory of fraud underlying Plaintiff's RICO claim is unmeritorious, and because the foreclosure at issue is insufficient on its own to give rise to a RICO claim, the Court dismisses Plaintiff's RICO claim with prejudice.

### 6. Violation of FDCPA

Plaintiff argues that "Defendants are debt collectors within the meaning of the [FDCPA][,]" and that "Defendants violated the FDCPA with actions pertaining to enforcement of the Note and the Plaintiff's [Deed]." ECF No. 1 ¶¶ 98, 99. Because the Court finds that the statute of limitations relating to Plaintiff's FDCPA claims has elapsed, it need not address whether the Bank Defendants and MTC qualify as "debt collectors" under 15 U.S.C. § 1692a(6).

14

The FDCPA's statute of limitations is "one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). Under Ninth Circuit precedent, the FDCPA limitations period "begins to run when the plaintiff knows or has reason to know of the injury which is the basis for the action." Magnum v. Action Collection Serv., Inc., 575 F.3d 935, 940 (9th Cir. 2009) (internal citations and quotations omitted). Here, Plaintiff alleges an FDCPA violation relating to the 2011 NOD, recorded five years before he filed his complaint. See ECF No. 1 ¶ 100; ECF 19-1 Ex. B. Plaintiff has not alleged any facts indicating that he was unaware of the NOD or that he is entitled to tolling. Consequently, the Court dismisses Plaintiff's FDCPA cause of action as time-barred.

### 7. Violation of TILA

Plaintiff alleges "Defendants . . . violated TILA by failing to provide Plaintiff with accurate material disclosures . . . and not . . . fully inform[ing] [him] of the pros and cons of adjustable rate mortgages." ECF No. 1 ¶ 109. Plaintiff also alleges Defendants did not notify him when his loan was transferred to a new assignee within thirty days of the transfer. Id. ¶ 110; see also 15 U.S.C. § 1641(g).

Under TILA, Plaintiff's claims relating to the origination of the loan and any subsequent transfers are subject to a one-year statute of limitations. See 15 U.S.C. § 1640(e) ("[A]ny action under this section may be brought in any United States district court . . . within one year from the date of the occurrence of the violation."). Here, the limitations periods began to run in 2004 for claims relating to improper disclosures during origination and in 2008 for claims relating to the FDIC's transfer of WaMu's assets to Chase. Plaintiff has not alleged that the statute of limitations is subject to tolling. Thus, to the extent that Plaintiff is alleging TILA violations relating to improper disclosures and the PAA, his claims are time-barred.

Although unclear from the Complaint itself, presumably Plaintiff is also alleging violations of TILA relating to the Assignment, which transferred interest in the DOT from Chase to BNY in 2016. While this claim is not time-barred, it also is unsupported by the record—in fact, the record illustrates that the Assignment was dated January 1, 2016, and that it was filed with the Recorder's Office on January 25, 2016. See ECF 19-1 Ex. C. While Plaintiff properly points out that the beneficiary of a DOT must notify the borrower of the transfer in writing within thirty days of the

transfer, see 15 U.S.C. § 1641(g), he has alleged no facts indicating that the Bank Defendants failed to provide him such a notice.

The Court grants Defendants' motions to dismiss this claim.

### 8. Violation of RESPA

Plaintiff alleges three separate RESPA violations. First, Plaintiff alleges that "Defendants are liable for violation of RESPA, 12 U.S.C. § 2605, Section 6." ECF No. ¶ 120. But section 2605 of RESPA contains no "Section 6," nor does the Complaint elaborate on what exactly the Plaintiff believes the violation is. Plaintiff's reliance on Johnson v. HSBC Bank USA, Nat. Ass'n, No. 3:11-cv-2091-JM-WVG, 2012 WL 928433, at *4 (S.D. Cal. Mar. 19, 2012), is unhelpful. The Johnson court evaluated a complaint which alleged improper assignment because (1) the initial nominee had no knowledge of the assignment and (2) the person who authorized the assignment was never actually appointed by the initial nominee's board of directors and therefore lacked any authority to make the assignment. Id. at *3. No such facts are pleaded here.

Second, Plaintiff alleges that he "has been harmed by the Defendants' failure to adequately respond to [his] qualified written request." Id. ¶ 123; see also 12 U.S.C. § 2605(e)(2) (describing a loan servicer's obligations with respect to a qualified written request). But Plaintiff fails to allege (a) when he submitted his qualified written request; (b) to whom he submitted his qualified written request to; and (c) whether his qualified written request complied with the requirements of section 2605(e)(1)(B). The Court therefore concludes that Plaintiff has failed to allege sufficient facts to state a claim for alleged violations of RESPA relating to his qualified written request.

Finally, Plaintiff appears to allege violations of sections 2605(a) and 2605(b), which relate to disclosure and notice requirement for assignments, sales, and transfers. See ECF No. 1 ¶ 124. Any action alleging a section 2605 violation must be brought within three years of the occurrence of the violation. 12 U.S.C. § 2614. Plaintiff asserts irregularities relating to the origination of the loan and the transfer of the Deed. See ECF No. 1 ¶¶ 124, 121. Origination took place in May 2004. The FDIC, as receiver for WaMu, transferred all right, title, and interest in WaMu's assets to Chase in September 2008. By either measure, the facts giving rise to Plaintiff's claims occurred well over three years before the Complaint was filed. Plaintiff's RESPA cause of action is barred

by the statute of limitations.

Plaintiff argues that he is entitled to equitable tolling "[d]ue to the misrepresentations and wrongful actions of Defendants." ECF No. 1 ¶ 125. District courts, in their discretion, can evaluate specific claims for equitable tolling and, because the doctrine often depends on matters outside the pleadings, "the applicability of the equitable tolling doctrine . . . 'is not generally amenable to resolution on a Rule 12(b)(6) motion.'" Rosenfield v. JPMorgan Chase Bank, N.A., 732 F. Supp. 2d 952, 964 (N.D. Cal. Aug. 9, 2010) (quoting Supermail Cargo, Inc. v. U.S., 68 F.3d 1204, 1206 (9th Cir. 1995). "However, when a plaintiff fails to allege facts demonstrating that he could not have discovered the alleged violations by exercising reasonable diligence, dismissal is appropriate." Id. (internal citation omitted). Here, Plaintiff alleges no facts demonstrating why the equitable tolling doctrine should be applied and, therefore, the relevant statute of limitations bars his claims. Accordingly, the Court dismisses this claim.

## CONCLUSION

For the foregoing reasons, Defendants' Motions to Dismiss are granted. Because MTC's conduct relating to the foreclosure process is privileged under California law, amendment would be futile and the Court dismisses each of Plaintiff's state law claims against MTC with prejudice. See Universal Mortg. Co, Inc. v. Prudential Ins. Co., 799 F.2d 458, 459 (9th Cir. 1986) ("Although leave to amend shall be freely given when justice so requires, it may be denied if the proposed amendment either lacks merit or would not serve any purpose because to grant it would be futile in saving the plaintiff's suit.") (internal citations and quotations omitted).

"The district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." Allen v. City of Beverly Hills, 911 F.2d 367, 373 (9th Cir. 1990) (internal quotations omitted) (quoting Ascon Properties, Inc. v. Mobile Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989). Here, Plaintiff has yet to amend his complaint. Therefore, as to Plaintiff's federal claims against MTC, the Court grants the Motion to Dismiss without prejudice. Similarly, with the exception of the RICO claim, the Court grants the Bank Defendants' Motion to

/ / /

/ / /

Dismiss without prejudice. Plaintiff must file any amended complaint within thirty (30) days of this order.

IT IS SO ORDERED.

Dated: December 9, 2016

_____
JON S. TIGAR
United States District Judge